**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| JESSE CRUZ, *et al.*,<br><br>                    Plaintiffs,<br><br>vs.<br><br>DANNY DURBIN, *et al.*,<br><br>                    Defendants. | Lead Case: 2:11–cv–342–LDG–VCF<br><br>**REPORT & RECOMMENDATION** |
| KAREN WILSON,<br><br>                    Plaintiff,<br><br>vs.<br><br>JESSE CRUZ, *et al.*,<br><br>                    Defendants. | Member Case: 2:12–cv–51–LDG–VCF |
| JESSE CRUZ, *et al.*,<br><br>                    Plaintiffs,<br><br>vs.<br><br>WABASH NATIONAL CORPORATION, *et al.*,<br><br>                    Defendants. | Member Case: 2:12–cv–1627–LDG–VCF |

This matter involves a motor-vehicle accident that occurred on Interstate 15 in Las Vegas, Nevada. Before the court is Meritor, Inc.'s Motion to Dismiss (#145[1]). Jesse Cruz opposed (#43[2]); and Meritor replied (#167). For the reasons stated below, Meritor's Motion to Dismiss should be granted.

---

[1] Parenthetical citations refer to the court's docket.
[2] Cruz's opposition was filed in the member case, *Cruz, et al. v. Wabash Nat'l Corp., et al.*, No. 12–cv–1627.

## BACKGROUND

On April 17, 2010, Jesse Cruz and Geovany Martinez were driving two Clem-Trans trucks on Interstate 15 outside of Las Vegas. (*See Cruz v. Wabash* Compl. (#1-3) at ¶ 8). They were carrying mail from Los Angeles. Martinez drove the lead truck; and Cruz followed in a second truck.

According to Cruz, "[a] black common tire tread lay coiled like a snake in [his] path, hidden against the black pavement and dark, moonless night." (Pl.'s Opp'n (#43) at 2:23–24). Cruz saw the tire tread, but reasoned it safer to pass over it than risk an emergency lane change. (*Id*. at 2:24–25).

It was not. Cruz passed over the tire tread, which struck the underside of his trailer and forced him to make an emergency stop. Cruz pulled over to the side of the road, but left the rear of his trailer protruding across the white line separating the shoulder and the roadway. Seeing that Cruz was in trouble, Martinez stopped to help. Martinez got out of his truck and walked some distance back to Cruz's truck. The pair immediately began investigating the brakes. (*Id*. at 3:1–5).

Meanwhile, a third truck—driven by Danny Durbin—approached. Durbin and his co-driver, Larry Wilson, were traveling in the center lane. A car flashed its lights three times. Durbin looked into his rearview mirror, observed a car behind him, and decided to move over. Once in the right lane, the car flashed its lights a fourth time. Again, Durbin looked into his rearview mirror and saw the same car in the center lane.

Sometime later, Durbin woke up. He had been in an accident. He found himself leaning up against the highway's center divider, watching a truck burn. He later learned that he had crashed into Cruz's truck after looking into his rearview mirror. An explosion resulted. Cruz, Martinez, and Durbin were severely injured. Twelve days later, Wilson died.

Three lawsuits commenced. The first—*Cruz v. Durbin*—is a personal injury action, which was filed on March 3, 2011. (*See* Compl. #1-1). Discovery in that action began on May 17, 2011. (Sched.

Order #28). As discovery progressed in that matter, Cruz learned additional details about the accident's causes. For instance, on October 14, 2011, Cruz's expert witness, Sam Terry, examined Cruz's trailer. (*See* Expert Report (#52) at 6). Terry concluded that Cruz was forced to pullover because his trailer's breaks had been replaced with a defective crossover air line brake system, which became compromised when Cruz passed over the tire tread. (Expert Report (#52) at 7).

Unlike conventional car breaks, which apply force to the wheel only when the brake pedal is applied by the driver, air breaks apply force to the trailer's axle on command—as when the driver applies the break—or automatically in the event that the brake system's air pressure depletes. (*See id.*) Accordingly to Terry, Cruz's replacement brake system was defective. (*Id.*) It left an air line exposed along the axle which became severed when hit by the tire tread. (*Id.*) This caused the breaks to unexpectedly lock and forced Cruz to pull over. (*Id.*)

A year after Terry completed his report, Cruz commenced the third action—*Cruz v. Wabash*—which is the subject of Meritor's Motion to Dismiss.[3] *Cruz v. Wabash* is a products-liability action that is subject to a two-year statute of limitations. On April 17, 2012, exactly two years after the accident, Cruz, his wife, and Martinez initiated *Cruz v. Wabash*, alleging that Wabash National Corporation defectively manufactured Cruz's trailer. *See Cruz, et al. v. Wabash Nat'l Corp.*, Case No. 2:12–cv–1627–LDG–VCF (D. Nev. Sept. 14, 2012).

In addition to naming Wabash as a defendant, the complaint in *Cruz v. Wabash* also names a number of fictitious Roe Entities, which are the subject of the instant dispute. The complaint alleges,

> That [at] all times ROE CORPORATIONS I through X are responsible in some manner for the events and happenings referred to herein. . . . That Defendant Wabash designed and manufactured a 1988 box trailer for sale and use in Nevada; [. . .] On or around April

---

[3] The second action, which is not relevant here, was filed by Wilson's widow against Cruz and Martinez and their supervisor and employer, Villalobos and Clem-Trans. *See Wilson v. Cruz, et al.*, Case No. 2:12–cv–51–LDG–VCF (D. Nev. Jan. 11, 2012).

> 17, 2012, JESSE CRUZ was driving northbound on I-15 about 30 miles south of Las Vegas pulling the 1998 box trailer designed and manufactured by Wabash; JESSE CRUZ was forced to pull over on the side of the road due to a defect in the trailer and during that emergency stop, another vehicle struck the trailer injuring JESSE CRUZ and GEOVANY MARTINEZ. [. . .] Defendants designed and manufactured and sold the trailer which was defective and unreasonable dangerous which led to the Plaintiffs' injuries.

(Compl. (#1-3) at ¶¶ 5–14). Two years later, on April 4, 2014, Cruz filed an amended complaint, adding Meritor, Inc. as a Defendant. The amended complaint alleges, for the first time, that the trailer's defective air-line brake system caused the accident. (Amend. Compl. (#31) at ¶¶ 8, 13–16, 19, 21).

Now, Meritor moves to dismiss the amended complaint, arguing, *inter alia*, that (1) Cruz's claims against Meritor are time barred and (2) the amended complaint does not relate back to the original complaint because Cruz's allegations regarding the Roe Entities do not create "a clear correlation between" Meritor and the factual basis for its alleged liability. (Def.'s Mot. Dismiss (#145) at 7). This report and recommendation follows.

## LEGAL STANDARD

"[A] party may assert the . . . failure to state a claim upon which relief can be granted" as a pretrial defense. FED. R. CIV. P. 12(b)(6). A party fails to state a claim upon which relief can be granted if the claim for relief is barred by a statute of limitations. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010).

To dismiss a claim under Rule 12(b)(6) on statute-of-limitation grounds, "the running of the statute [must be] apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006). Additionally, it must appear "beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Von Saher*, 592 F.3d at 969 (citing *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)); *Frank v. City of Henderson*, No. 2:12–cv–1988–JAD–NJK, 2014 WL 4417896, at *3 (D. Nev. Sept. 8, 2014) (Dorsey, J.).

**DISCUSSION**

Two years after the accident, Cruz timely filed his original complaint against Wabash and several Roe Defendants, alleging that Wabash defectively manufactured Cruz's trailer. Four years after the accident, Cruz filed an amended complaint alleging that Meritor defectively manufactured Cruz's air brake assembly system. Now, Meritor moves to dismiss, arguing that Cruz's amended complaint is barred by Nevada's two-year statute of limitations. NEV. REV. STAT. § 11.190(4)(e). This presents one question: whether Cruz's amended complaint "relates back" to the date of Cruz's original complaint and is, therefore, timely.

Federal Rule of Civil Procedure 15(c) governs whether an amended pleading "relates back" to the date of an original pleading. An amended pleading may relate back to the date of the original pleading if "the law that provides the applicable statute of limitations allows relation back." FED. R. CIV. P. 15(c)(1)(A). This provision—which is the only provision applicable here[4]—incorporates state law and instructs the court "to look to the entire body of limitations law that provides the applicable statute of limitations." *Butler v. Nat'l Cmty. Renaissance of Cal.*, — F.3d —, No. 11–55806, 2014WL 4473959, at *8 (9th Cir. Sept. 12, 2014) (citing *Hogan v. Fischer*, 738 F.3d 509, 517 (2nd Cir. 2013)).

In Nevada, the governing body of limitations law is provided by the Supreme Court's decision in *Nurenberger Hercules-Werke GMBH v. Virostek*, 107 Nev. 873, 881 (1991). There, the Court expounded a three-part test for adjudicating the issue here: whether an amended pleading, which adds a new party, relates back to an original pleading, which only names Roe Defendants. In *Nurenberger*, the Court held that the amended pleading relate backs only if the plaintiff (1) originally plead "fictitious or

---

[4] Rule 15 provides three paths by which an amended pleading may relate back to an original pleading. *See* FED. R. CIV. P. 15(c)(1)(A)–(C). The parties agree that the first, Rule 15(c)(1)(A), is the only provision under which Cruz's amended complaint could relate back here. (Def.'s Mot. to Dismiss (#145) at 4:20–22) (*accord* Def.'s Opp'n (#43) at 5). Accordingly, the court limits its discussion to Rule 15(c)(1)(A).

doe defendants in the caption of the complaint," (2) originally plead "the basis for naming defendants by other than their true identity, and clearly specifying the connection between the intended defendants and the conduct, activity, or omission upon which the cause of action is based" and (3) exercised "reasonable diligence in ascertaining the true identity of the intended defendants and promptly moving to amend the complaint in order to substitute the actual for the fictional." *Id*.

The first prong is undisputed. Cruz's original complaint named Roe Defendants I through X. (Compl. (#1-3) at ¶ 5). The court's focus is on the two remaining prongs: whether (1) Cruz's original complaint plead facts "clearly specifying a connection between" Meritor and the accident and (2) whether Cruz exercised reasonable diligence in discovering Meritor's identity. *Nurenberger*, 107 Nev. at 881.

Neither prong is satisfied. Regarding the second prong, Cruz's original compliant named Roe Defendants that "are responsible in some manner" for the accident. (Compl. (#1-3) at ¶ 5). This generalized allegation is what *Nurenberger* precludes: precautionary placeholders. To satisfy *Nurenberger's* second prong, the original pleading must allege facts that point to an intended-but-presently-unidentified defendant. *Nurenberger* states that the original pleading must show who the "intended," "target[ed]," or "contemplate[d]" defendant is, "notwithstanding the uncertainty of their true identit[y]". *Nurenberger*, 107 Nev. at 880–81 (citations omitted). In other words, under *Nurenberger*, the failure to plead the actual defendant's identity is harmless if the factual allegations show who the intended defendant is. Accordingly, in *Nurenberger* the Court held that the plaintiff's original pleading adequately targeted a specific defendant because the complaint named the Roe Entities that "'designed, manufactured, assembled and marketed, advertised and otherwise supplied into the stream of commerce' the defective Sachs moped." *Nurenberger*, 107 Nev. at 880.

Cruz's original complaint is not analogous. Rather than targeting a company that manufactures air brake systems, like Meritor, the original complaint names Roe Defendants that "are responsible in some manner" for the accident. (Compl. (#1-3) at ¶ 5). This allegation casts a broad net; and it attempts what *Nurenberger* precludes: naming Roe Entities "as a precautionary measure in the event theories of liability other than those set forth in the complaint are later sought to be added by amendment." *Id*.

In order for Cruz's amended complaint to relate back to the date of his original complaint, the original complaint must "clearly specify[] a connection between" Meritor and the accident. *Nurenberger*, 107 Nev. at 881. This was possible. In October of 2011, Cruz's expert witness discovered that the trailer's crossover air line brake system may have caused the accident. (Expert Report (#52) at 7). In April of 2012, Cruz filed his original complaint in *Cruz v. Wabash*, naming Roe Defendants that "are responsible in some manner" for the accident. Nonetheless, it was not until April of 2014 that Cruz filed an amended complaint, naming Meritor.

Cruz argues that he satisfied *Nurenberger's* second prong for two reasons. First, Cruz argues that *Nurenberger's* second prong is satisfied because the original complaint and amended complaint "plead the SAME THEORIES of liability": "Defective brake design and manufacture." (Pl.'s Opp'n (#43) at 6:27–28). This is incorrect. Cruz's original complaint does not contain any allegation regarding the trailer's brakes. (*See generally* Compl. #1-3). It merely alleges that Cruz was forced to stop because of "a defect in the trailer" and that he seeks recovery from Roe Defendants that "are responsible in some manner" for the accident. (*Id*. at ¶¶ 5, 9).

Second, Cruz argues that *Nurenberger's* second prong is satisfied because the original complaint is written in the plural form and names "Defendants." (Pl.'s Opp'n (#43) at 7:12). This, Cruz contends, "is the basis of the claims against Meritor [because it creates] a 'clear correlation between the fictitious defendants and the pleaded factual basis for liability' against Meritor." (*Id*. at 12–14). This argument

7

fails as a matter of law. The term "Defendants" may apply to any person or entity. Pleading "Defendants" without any supporting facts indicating who the plural Defendants may be is vague, not clear.

*Nurenberger's* third prong is also unsatisfied. The third prong required Cruz to exercise reasonable diligence in discovering Meritor's identity. *Nurenberger*, 107 Nev. at 881. Cruz argues that he exercised reasonable diligence because Meritor's identify could be found "[o]nly through filing and discovery" since "[t]here are thousands, if not millions of parts suppliers for a trailer like the one in question here." (Pl.'s Opp'n (#43) at 7:24, 8:5). Cruz contends that "[i]t is unreasonable, if not impossible, to try to imagine every scenario in which a [parts manufacturer] could have contributed to" the accident. (*Id*. at 8:7–8).

This is false. Cruz and Martinez immediately suspected that the trailer's brakes may be defective when Cruz pulled over. This suspicion was confirmed by Cruz's own expert witness. One year before Cruz filed his original complaint in *Cruz v. Wabash*, Cruz's expert witness in *Cruz v. Durbin* concluded that the trailer's air line brake system was defective and contributed to the accident. Nonetheless, Cruz waited until 2014—three years after the expert report was completed and two years after the statute of limitations expired—to plead that the trailer's air line brake system was defective.[5]

## CONCLUSION

Under *Nurenberger*, a statute-of-limitations defense does not protect a Roe Defendant if the original, timely pleading (1) clearly specifies a connection between the intended defendant and the alleged conduct and (2) the plaintiff exercises reasonable diligence in ascertaining the Roe Defendant's true identity. *Nurenberger*, 107 Nev. at 881. Here, there is no clear connection. Cruz's original

---

[5] Cruz also argues that this prong militates in its favor because Meritor did not brief the third prong and, therefore, conceded the point. (Pl.'s Opp'n (#43) at 7:20). This is not true. Meritor's motion states, "Meritor does not concede that Plaintiffs have satisfied the third requirement." (Def.'s Opp'n (#145) at 6:28, n. 3).

compliant failed to mention the air line break system, which he suspected to be defective. Instead, he named all Roe Defendants that "are responsible in some manner" for the accident. (Compl. (#1-3) at ¶ 5).

Cruz similarly failed to exercise reasonable diligence in discovering Meritor's identity or alleging that the trailer's air line brake system was defective. On the day of the accident, Cruz suspected that the brake system was defective. In October of 2011, Cruz's suspicion was confirmed: his own expert witness concluded that the system defectively left an air line exposed along the axle, which became severed when it was hit by the tire tread. Nonetheless, Cruz did not plead that the air line brake system was defective when he filed his original complaint in 2012. He waited until 2014, two years after the statute of limitations expired.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that Meritor, Inc.'s Motion to Dismiss (#145) be GRANTED.

IT IS FURTHER RECOMMENDED that Meritor, Inc. be DISMISSED from this action.

IT IS SO RECOMMENDED.

DATED this 17th day of October, 2014.

_____

CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE