# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| JESSE CRUZ, *et al.*,<br><br>         Plaintiffs,<br><br>vs.<br><br>DANNY DURBIN, *et al.*,<br><br>         Defendants. | Lead Case: 2:11–cv–342–LDG–VCF<br><br>**<u>ORDER</u>** |
| KAREN WILSON,<br><br>         Plaintiff,<br><br>vs.<br><br>JESSE CRUZ, *et al.*,<br><br>         Defendants. | Member Case: 2:12–cv–51–LDG–VCF |
| JESSE CRUZ, *et al.*,<br><br>         Plaintiffs,<br><br>vs.<br><br>WABASH NATIONAL CORPORATION, *et al.*,<br><br>         Defendants. | Member Case: 2:12–cv–1627–LDG–VCF |

This matter involves a motor vehicle accident that occurred on Interstate 15 in Las Vegas, Nevada. (*See, e.g.*, Cruz Compl. #1-1[1]). Before the court are Defendant Danny Durbin's Motions to Compel (#137, #140), Durbin's Motion to Extend Time (#139), Plaintiff Jesse Cruz's Motion for

---

[1] Parenthetical citations refer to the court's docket.

Discovery Sanctions (#141), and the parties' Stipulation to Extend Discovery (#156). For the reasons stated below, Durbin's motions are granted in part and denied in part, Cruz's motion is denied, and the parties' stipulation is denied.

## BACKGROUND

On April 17, 2010, Jesse Cruz and Geovany Martinez were driving two Clem-Trans trucks on Interstate 15 outside of Las Vegas. (*See Cruz v. Wabash* Compl. (#1-3) at ¶ 8). They were carrying mail from Los Angeles. Martinez drove the lead truck; and Cruz followed in a second truck.

According to Cruz, "[a] black common tire tread lay coiled like a snake in [his] path, hidden against the black pavement and dark, moonless night." (Pl.'s Opp'n (#43) at 2:23–24). Cruz saw the tire tread, but reasoned it safer to pass over it than risk an emergency lane change. (*Id*. at 2:24–25).

It was not. Cruz passed over the tire tread, which struck the underside of his trailer and forced him to make an emergency stop. Cruz pulled over to the side of the road, but left the rear of his trailer protruding across the white line separating the shoulder and the roadway. Seeing that Cruz was in trouble, Martinez stopped to help. Martinez got out of his truck and walked some distance back to Cruz's truck. The pair immediately began investigating the brakes. (*Id*. at 3:1–5).

Meanwhile, a third truck—driven by Danny Durbin—approached. Durbin and his co-driver, Larry Wilson, were traveling in the center lane. A car flashed its lights three times. Durbin looked into his rearview mirror, observed a car behind him, and decided to move over. Once in the right lane, the car flashed its lights a fourth time. Again, Durbin looked into his rearview mirror and saw the same car in the center lane.

Sometime later, Durbin woke up. He had been in an accident. He found himself leaning up against the highway's center divider, watching a truck burn. He later learned that he had crashed into

Cruz's truck after looking into his rearview mirror. An explosion resulted. Cruz, Martinez, and Durbin were severely injured. Twelve days later, Wilson died.

Three lawsuits commenced. The first action was filed by Cruz and Martinez against Durbin and his employer, Champion Transportation Services, Inc. *See Cruz v. Durbin*, Case No. 2:11–cv–342–LDG–VCF (D. Nev. March 3, 2011). The second action was filed by Wilson's widow against Cruz and Martinez and their supervisor and employer, Villalobos and Clem-Trans. *See Wilson v. Cruz, et al.*, Case No. 2:12–cv–51–LDG–VCF (D. Nev. Jan. 11, 2012). The third action was filed by Cruz and Martinez against Wabash National, the company that manufactured his truck, and Meritor, Inc., the company that manufactured the truck's allegedly defective brakes. *See Cruz, et al. v. Wabash National Corporation, et al.*, Case No. 2:12–cv–1627–LDG–VCF (D. Nev. Sept. 14, 2012). On January 9, 2014, all three actions were consolidated "for pretrial and discovery purposes only." (*See* Order #95).

The parties are in the process of completing discovery, which has been extended nine times. (*See* Docs. #37, #46, #48, #51, #56, #63, #65, #74, #104, #126). On February 14, 2014, the court entered the ninth discovery plan and scheduling order. (Doc. #104). In pertinent part, it set April 23, 2014, as the deadline to disclose initial experts and June 6, 2014, as the deadline to disclose rebuttal experts. (*Id*. at 3:9, 11).

On April 23, 2014, Cruz timely disclosed three damages experts that are relevant here: Drs. Loong, Shah, and Hirschfeld. (Def.'s Mot. (#140) at 2:19–20) (*accord* Pl.'s Opp'n (#153) at 5:8–9). The experts diagnosed Cruz with, neurological, psychological, and neuropsychological dysfunctions, which are allegedly attributable to the accident. (Def.'s Mot. (#140) at 2). These conditions increase Cruz's damages by millions of dollars. (*Id*.)

On June 4, 2014, the court extended the deadline to disclose rebuttal experts from June 6, 2014, to September 15, 2014. (Doc. #126). On August 26, 2014, which is exactly twenty-one days before the

3

September 15, 2014 deadline, Durbin filed the instant Motions to Compel (#137, #140) and Motion to Extend Time (#139). Durbin requests a sixty-day extension of the rebuttal expert disclosure deadline for one purpose: to conduct three Rule 35 examinations on Cruz's neurological, psychological, and neuropsychological condition.

Shortly thereafter, Meritor filed the instant Stipulation to Extend Discovery (#156). It requests a ten-month extension of the discovery deadlines in the products-liability case, *Cruz, et al. v. Wabash National Corporation, et al.*, alone. However, on October 17, 2014, the court entered a report and recommendation, stating that Meritor should be dismissed from this action. (Rep. & Rec. (#179) at 9:13).

Meanwhile, Cruz also filed the instant Motion for Discovery Sanctions against Wabash National. (Doc. #141). The motion, which the court treats as a motion to compel, concerns the products-liability action and seeks three general forms of relief: an order (1) locating Wabash's Rule 30(b)(6) deposition in Las Vegas, rather than at its principle place of business, in Indiana; (2) compelling answers regarding the brake's design and configuration; and (3) imposing six discovery sanctions, including dispositive sanctions (*See generally* Pl.'s Mot. #141).

On October 9, 2014, the court held a hearing on the parties' motions. (Mins. Proceedings #178). This order follows.

## DISCUSSION

The parties' motions present three general questions: (1) whether discovery deadlines should be extended in order to permit Meritor, Inc. to conduct discovery; (2) whether discovery should be extended in order to permit Durbin to conduct three Rule 35 rebuttal examinations of Cruz; and (3) whether Wabash National satisfied its discovery obligations when responding to Cruz's written discovery. Each is discussed below.

4

### I. **The Parties' Stipulation to Extend Discovery is Denied**

The first question concerns the products-liability action, *Cruz v. Wabash*. In that action, the parties request a ten-month discovery extension "as to only the products liability case." (Stip. to Extend #156). The parties argue that an extension is warranted because Meritor, Inc. was only added as a Defendant on April 4, 2014, nearly four years after the action commenced. (*Id*. at 3).

The parties' stipulation to extend discovery is denied for two reasons. First, on October 17, 2014, the court entered a report and recommendation, stating that Meritor should be dismissed from this action. (Rep. & Rec. (#179) at 9:13). As stated in the report and recommendation, Cruz's claims against Meritor are barred by Nevada's two-year statute of limitations. (*See id*. at 8–9).

Second, the parties' stipulation is denied because it seeks an extension "as to only the products liability case." (Stip. to Extend #156). These cases have been consolidated for the purpose of conducting joint discovery. (*See* Consol. Order #94). Extending deadlines in one but not all of the actions risks creating unnecessary complications. As this court recently stated,

> Now that the cases are consolidated, there would be little utility limiting the use of experts designated in the third filed case only to that case. There would be no logic to conferring some type or procedural advantage to the parties who happened to be joined in that case. The discovery schedule set forth below is just as "certain" as one crafted on a piecemeal basis. Ambiguities regarding the availability of expert testimony for trial, whether consolidated or bifurcated, are eliminated.

(Doc. #104 at 2:10–14). Therefore, parties' Stipulation to Extend Discovery (#156) is denied.

### II. **Whether Discovery should be Extended to Permit Durbin to Conduct three Rule 35 Examinations**

The parties' filings present a second question: whether discovery should be extended in order to permit Durbin to conduct three Rule 35 examinations of Cruz and rebut his evidence of damages.

Federal Rule of Civil Procedure 35 governs physical and mental examinations. It states, "[t]he court where the action is pending may order a party whose mental or physical condition . . . is in

5

controversy to submit to a physical or mental examination." The movant must demonstrate "good cause" and, if the motion is granted, the court must "specify the time, place, manner, conditions, and scope of the examination." FED. R. CIV. P. 35(a). The decision whether to order a Rule 35 examination rests in the sound discretion of the trial court. *Schlagenhauf v. Holder*, 379 U.S. 104 (1964). The decision whether to order a Rule 35 examination is discretionary even when the "good cause" and "in controversy" requirements are met. *Id*.

Because the parties concede that Cruz's physical and mental condition is in controversy, the court's inquiry focuses on the one disputed issue: whether good cause exists to permit Durbin to conduct rebuttal examinations. Durbin argues that good cause exists because Cruz disclosed three experts, which increased Cruz's claimed damages by millions of dollars. Preventing Durbin from conducting a rebuttal examination would, Durbin argues, unfairly permit Cruz to introduce unrebutted evidence of millions of dollars of neurological, psychological, and neuropsychological damages. In response, Cruz contends that good cause does not exist because rebuttal examinations are not permitted under state law or federal law.

Cruz's opposition fails as a matter of law for two reasons. First, federal law controls. The question raised by Durbin's motion—(*viz.*, whether Durbin may conduct additional discovery under Federal Rule of Civil Procedure 35)—is strictly procedural. Nonetheless, Cruz relies on state law, *inter alia*, to defeat Durbin's motion. While informative, Nevada law is inapplicable. *See* FED. R. CIV. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts"); *Hanna v. Plumer*, 380 U.S. 460 (1965).

Second, Cruz's opposition fails as a matter of law because he does not argue either prong of the Rule 35 inquiry: whether good cause exists and whether Cruz's mental or physical condition is in controversy. Rather, the gravamen of Cruz opposition is that "causation and damages" experts should always "be designated as [] initial expert[s]." (Def.'s Opp'n (#153) at 7:22–24) ("Federal Case [*sic*] law

clearly indicates that experts that address 'causation and damages' 'should be designated as an initial expert, rather than as a rebuttal expert.'").

Cruz cites one Eighth Circuit and two Fifth Circuit opinions in support of this proposition. *See, e.g.*, *Morgan v. Commercial Union Assur*. Co., 606 F.2d 554, 556 (5th Cir. 1979) ("Rebuttal is a term of art, denoting evidence introduced by a Plaintiff to meet new facts brought out in his opponent's case in chief [. . .] [A] defense witness whose purpose is to contradict an expected and anticipated portion of the plaintiff's case in chief can never be considered a "rebuttal witness," or anything analogous to one."). The rule announced by these cases is inapplicable here. Courts in this Circuit do not apply this rule. Rather, the court's Rule 16 case-management order—which expressly provides for rebuttal damages experts—controls. (*See, e.g.*, Sched. Order (#126) at 2).

Even if courts in this Circuit applied the rule in *Morgan*, which they do not, it would be inappropriate to apply the rule here. Durbin requests three Rule 35 rebuttal examinations because Cruz's disclosure of millions of dollars of neurological, psychological, and neuropsychological damages was not "expected and anticipated." *Morgan*, 606 F.2d at 556. Cruz contends that Durbin was on notice of Cruz's brain injury because Cruz disclosed medical records and one expert report related to his brain injury in September of 2013. (Def.'s Opp'n (#153) at 3:19–23). This argument is unpersuasive. Even if Dr. Loong's September 2013 report put Durbin on notice that Cruz suffers from a neuropsychological dysfunction, it could not have put Durbin on notice of Dr. Shah or Dr. Hirschfeld's reports, which diagnosed Cruz with different neurological and psychological dysfunctions.

Rule 1 instructs the court to construe the rules to secure "the just, speedy, and inexpensive determination of every action and proceeding." Here, Durbin requested a Rule 35 examination and a timely discovery extension in order to rebut Cruz's evidence of millions of dollars of neurological, psychological, and neuropsychological damages. Denying Durbin's request will not advance Rule 1's

goal. On the contrary, it would allow Cruz to introduce unrebutted evidence of damage on account of a technicality: Durbin's alleged failure to comply with Fifth Circuit law and designate his Rule 35 examiners as initial experts rather than rebuttal experts.

Therefore, the court finds that Cruz's physical and mental condition is in controversy and that good cause exists to permit Durbin to conduct three rebuttal examinations. *See Schlagenhauf*, 379 U.S. at 104. However, the court denies Durbin's request to extend the discovery deadlines for any purpose other than conducting the three Rule 35 examinations discussed in Durbin's motion.

### III. <u>Whether Wabash National Satisfied its Discovery Obligations</u>

Finally, the court considers Cruz's Motion for Discovery Sanctions against Wabash National (#141). The motion, which the court treats as a motion to compel, seeks three forms of relief: (1) answers to interrogators and requests for production of documents; (2) designation of Wabash's Rule 30(b)(6) deponent; and (3) six discovery sanctions, including dispositive sanctions. (*See generally* Pl.'s Mot. #141). After reviewing the governing law, the court addresses each disputed request.

#### A. *Legal Standard*

Federal Rule of Civil Procedure 26(b)(1) governs discovery's scope and limits. In pertinent part, Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Rule 26 defines relevant information as any information that "appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. The Supreme Court states that Rule 26 affords liberal discovery. *Seattle Times, Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). Liberal discovery "serves the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993).

Where a party resists discovery, the requesting party may file a motion to compel. Rule 37 governs motions to compel, and provides that a "party seeking discovery may move for an order

compelling an answer, designation, production, or inspection" if a party fails to answer an interrogatory submitted under Rule 33" or "fails to respond" to a request under Rule 34. Before moving to compel, Rule 37 requires the movant to include a certification that the movant has "in good faith conferred or attempted to confer" with the party resisting discovery before seeking judicial intervention. FED. R. CIV. P. 37(a)(1); *see also* LR 26-7(b); *ShuffleMaster, Inc. v. Progressive Games, Inc*., 170 F.R.D. 166, 171 (D. Nev. 1996) (discussing the District of Nevada's meet-and-confer requirements).

The party resisting discovery carries the heavy burden of showing why discovery should be denied. *Blankenship v. Hearst Corp*., 519 F.2d 418, 429 (9th Cir. 1975). The resisting party must show that the discovery request is overly broad, unduly burdensome, or irrelevant. *Teller v. Dogge*, No. 2:12-cv-00591-JCM, 2013 WL 1501445 (D. Nev. Apr. 10, 2013) (Foley, M.J.) (citing *Graham v. Casey's General Stores*, 206 F.R.D. 251, 253–4 (S.D. Ind. 2000).

To meet this burden, the resisting party must specifically detail the reasons why each request is improper. *Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999). Boilerplate, generalized objections are inadequate and tantamount to making no objection at all. *Id.* (citing *Cipollone v. Liggett Group, Inc*., 785 F.2d 1108, 1121 (3d Cir. 1986) (objecting party must show a particularized harm is likely to occur if the requesting party obtains the information that is the subject of the particular objections; generalized objections are insufficient)).

Therefore, the party opposing discovery must allege (1) specific facts, which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence, or (2) sufficient detail regarding the time, money and procedures required to comply with the purportedly improper request. *Jackson v. Montgomery Ward & Co*., *Inc*., 173 F.R.D. 524 (D. Nev. 1997) (citations omitted); *Cory v. Aztec Steel Bldg*., Inc., 225 F .R.D. 667, 672 (D. Kan. 2005).

The court has broad discretion in controlling discovery, *see Little*, 863 F.2d at 685, and in determining whether discovery is burdensome or oppressive. *Diamond State Ins. Co. v. Rebel Oil. Inc.*, 157 F.R.D. 691, 696 (D. Nev. 1994). The court may fashion any order which justice requires to protect a party or person from undue burden, oppression, or expense. *United States v. Columbia Board. Sys., Inc.*, 666 F.2d 364, 369 (9th Cir.1982) *cert. denied*, 457 U.S. 1118 (1982).

### B.     *The Interrogatories & Requests for Production of Documents*

The first discovery dispute concerns nine written discovery requests: seven of Wabash's answers to Cruz's interrogatories and two of its responses to Cruz's document requests. The first dispute involves interrogatory number three. It asks:

> State the names and addresses of all persons primarily responsible for the design, engineering and safety engineering of the brakes and brake air lines for the subject vehicle, including department heads as well as those directly involved in the design and testing.

(Pl.'s Mot. (#141) at 4). In response, Wabash stated that Parker Hannifin Corporation, not Wabash, designed the brake configuration, but that Wasbash installed the brakes. (*Id*.) In a subsequent letter, dated July 17, 2014, Wabash supplemented its response, saying that it has attempted to locate the employee who initially installed the brakes in 1997 but has been unable to do so. (Letter (#150-2) at 1).

Now, Cruz moves to compel on the grounds that "Wabash provided no names" of who installed the brakes. (Pl.'s Mot. (#141) at 4:21–22). This motion is denied. Wabash has not "fail[ed] to make disclosures or to cooperate in discovery," which is the predicate for a Rule 37 motion. *See* FED. R. CIV. P. 37 ("Rule 37. Failure to Make Disclosures or to Cooperate in Discovery"). Wabash answered Cruz's initial question regarding the design of the brakes and later made a good faith—albeit unsuccessful— effort to obtain information regarding the installation of the brakes. This is all that Rule 26 requires.

The court reaches the same conclusion with regard to Cruz's two requests for production of documents. They seek documents relating to the design and manufacture of the trailer and information identifying "TEM." (Pl.'s Mot. (#141) at 5). The initials, "TEM," appear on an engineering schematic from 1997. Cruz wants to know who TEM is. Wabash states that it searched its records but has no information regarding TEM. So too with regard to the documents relating to the design and manufacture of the trailer. Seventeen years have elapsed since the trailer was designed in 1997 and Wabash states that it destroyed much of the information related to this request in the ordinary course of business. This is all that Rule 26 requires. It is not a proper basis for a motion to compel. What is at issue here is Wabash's *inability* to provide responsive answers, not its *refusal* to provide responsive answers. *See* FED. R. CIV. P. 37.

The second interrogatory at issue—interrogatory number four—asks Wabash to "[i]dentify any and all studies, analyses or tests [Wabash] has conducted or performed with regard to the subject vehicle's brake air lines . . . ." (Pl.'s Mot. (#141) at 6). Wabash answered, "none." (*Id.*) Now, Cruz moves to compel. As memorialized by Wabash's July 17, 2014 letter, Wabash made a good faith—albeit unsuccessful—effort to obtain information regarding tests but found none. (Letter (#150-2) at 2). This means that Wabash has not "fail[ed] to make disclosures or to cooperate in discovery," which is the predicate for a Rule 37 motion. *See* FED. R. CIV. P. 37.

The third interrogatory at issue—interrogatory number five—asks Wabash to "[i]dentify any and all trailer designs manufactured by Wabash that used a brake air line that crosses over in front of the axle. . . ." (Pl.'s Mot. (#141) at 6). Because Wabash did not design the brakes, it answered that there are none. Now, Cruz moves to compel, arguing that Wabash agreed to supplement its answer to this interrogatory. Wabash did not agree to supplement its answer. (*See* Letter (#150-2) at 2).

11

The fourth interrogatory at issue—interrogatory number six—reads: "[s]tate whether [Wabash] provided any information, warnings and/or instructions to buyers and/or repairmen of the subject trailer concerning the protection and/or replacement of brake air lines. . . ." (Pl.'s Mot. (#141) at 7). Again, Wabash answered that there were none. (Letter (#150-2) at 3–4). Nonetheless, Cruz moved to compel. For the reasons already stated, Wabash has not "fail[ed] to make disclosures or to cooperate in discovery." *See* FED. R. CIV. P. 37.

The fifth interrogatory at issue—interrogatory number eight—asks Wabash to "[i]dentify any and all discussions, oral or written, that you have had regarding any concerns by you or others about the safety of brake air lines cross over in front of the axle. . . ." (Pl.'s Mot. (#141) at 7). Wabash initially answered that it was unaware of any complaints regarding the brakes, (*id*.), and later agreed to amend its answer to reflect that "Wabash is not aware of any discussions regarding the safety of brake air lines crossing over in front of the axle. . . ." (Letter (#150-2) at 4). Nonetheless, Cruz moved to compel. Again, Wabash did not "fail[] to make disclosures or to cooperate in discovery." FED. R. CIV. P. 37.

The final two interrogatories at issue—interrogatories ten and fifteen—present similar circumstances. With regard to both, Cruz moved to compel because Wabash agreed to amend its answers but allegedly failed to do so. (Pl.'s Mot. (#141) at 7–8). However, as memorialized by Wabash's July 17, 2014 letter, Wabash amended its answer to interrogatory ten by providing two names: John Gabriel and Robert Sibley. It also amended its answer to interrogatory fifteen to state that Wabash "is not aware that anyone considered that the brake air line crossing over in front of the axle could be damaged from road debris or objects during travel." (Letter (#150-2) at 4). These responses rendered Cruz's motion to compel unnecessary.

### B. *Wabash's Rule 30(b)(6) Deponent*

The final discovery dispute concerns Wabash's Rule 30(b)(6) deponent. In June of 2014, Cruz noticed Wabash's Rule 30(b)(6) deposition in Las Vegas, Nevada. (*See* Notice (#141-10) at 1). Wabash objected, arguing that "the deposition of a defendant's corporate designees is the corporation's principal place of business." (Letter (#141-12) at 1). Here, that is Lafayette, Indiana. This means that there is a rebuttal presumption that Wabash's Rule 30(b)(6) deponent should be deposed in Lafayette, Indiana. *Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 483 (10th Cir. 1995); *Fausto v. Credigy Serv. Corp.*, 251 F.R.D. 427, 429 (N.D. Cal. 2008) (citation omitted) (discussing natural-person defendants).

Now, Cruz moves to compel. The only arguments he provides regarding Wabash's Rule 30(b)(6) deponent appear for the first time in his reply brief. He argues that Wabash should be sanctioned, not because it refused to produce a witness in Nevada, but because it failed to name who the Rule 30(b)(6) deponent would be and when he or she would be deposed.

This argument fails for three reasons. First, arguments raised for the first time in reply are waived. *See United States v. Gianelli*, 543 F.3d 1178, 1184 n. 6 (9th Cir. 2008); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *Sophanthavong v. Palmateer*, 378 F.3d 859, 871-72 (9th Cir. 2004) (refusing to reach argument raised for the first time in a reply brief); *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) (per curiam) ("Issues raised for the first time in the reply brief are waived."); *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir.1992) (per curiam) (noting that courts generally decline to consider arguments raised for the first time in a reply brief). As stated by the Ninth Circuit in *Tovar v. United States Postal Service*, it is improper to raise new arguments in a reply brief because the opposing party is deprived of an opportunity to respond. 3 F.3d 1271, 1273 n.3 (9th Cir. 1993).

13

Second, the Rule 30(b)(6) deponent's name is irrelevant. Rule 30(b)(6) deponent testify on behalf of the organization. *See* FED. R. CIV. P. 30(b)(6). Therefore, the court denies Cruz's motion to compel with regard to the identify of Wabash's Rule 30(b)(6) deponent because it seeks irrelevant information.

Third, it is not Wabash's duty to notice and schedule the time of a deposition that Cruz will take. Because Wabash complied with its discovery obligations, Cruz's motion to compel and request for the imposition of sanctions is denied.

## CONCLUSION

Discovery has been extended nine times. (*See* Docs. #37, #46, #48, #51, #56, #63, #65, #74, #104, #126). Now, the parties move for a tenth extension to allow Meritor, Inc. to engage in discovery and permit Durbin to conduct three Rule 35 examinations. These requests are unnecessary. On October 17, 2014, the court entered a report and recommendation stating that Meritor should be dismissed as a Defendant. Additionally, there is no reason to extend the discovery deadlines in all three actions to permit Durbin to conducted rebuttal examinations in *Cruz v. Durbin*. Therefore, with the limited exception of Durbin's Rule 35 examinations, the court denies the parties' requests to extend discovery with prejudice and without leave to renew.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Defendant Danny Durbin's Motions to Compel (#137, #140) are GRANTED.

IT IS FURTHER ORDERED that Defendant Danny Durbin's Motion to Extend Time (#139) is DENIED, except that Durbin may conduct three Rule 35 examinations notwithstanding the current discovery cutoff date of October 30, 2014.

IT IS FURTHER ORDERED that Plaintiff Jesse Cruz's Motion for Discovery Sanctions (#141) is DENIED.

IT IS FURTHER ORDERED that Exhibit 11 to Cruz's Motion to Compel is SEALED.

IT IS FURTHER ORDERED that, on or before October 27, 2014, Plaintiff Jesse Cruz must SHOW CAUSE why Exhibit 11 to Cruz's Motion to Compel should remain sealed under *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178–80 (9th Cir. 2006) and Local Rule 10-5(b).

IT IS FURTHER ORDERED that the parties' Stipulation to Extend Discovery (#156) is DENIED.

IT IS FURTHER ORDERED that all parties MEET AND CONFER regarding the consolidation of these cases for trial.

IT IS FURTHER ORDERED that the parties file a joint STATUS REPORT regarding consolidation by December 15, 2014, or appropriate motions if a stipulation cannot be reached.

IT IS FURTHER ORDERED that the following dates APPLY:

| | |
|---|---|
| Discovery Cutoff Date: | October 30, 2014 |
| Dispositive Motions Deadline: | January 16, 2015 |
| Joint Pretrial Order Deadline: | March 2, 2015. If dispositive motions are filed, the joint pretrial order is due thirty (30) days from the entry of the court's rulings on the motions. |

IT IS SO ORDERED.

DATED this 20tht day of October, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE

15